Opinion
 

 TODD, Acting P. J.
 

 In a multidefendant trial involving various drug charges, a jury convicted Juan Manuel Perez of one count of selling and
 
 *1317
 
 furnishing cocaine (Health & Saf. Code,
 
 [2]
 
 § 11352, subd. (a)), one count of possession of cocaine (§ 11350, subd. (a)) and one count of possession of cocaine for sale (§ 11351). The jury also convicted Guadalupe Onate of one count of selling and furnishing cocaine (§ 11352, subd. (a)), one count of possession of cocaine (§ 11350, subd. (a)), one count of selling and furnishing tar heroin (§ 11352, subd. (a)), and one count of possession of tar heroin (§ 11350, subd. (a)). The jury found Carlos Victor Abe guilty of one count of selling and furnishing tar heroin (§ 11352, subd. (a)) and one count of possession of tar heroin (§ 11350, subd. (a)), and acquitted him of one count of possession of tar heroin for sale (§ 11351). The jury found Daniel Villa
 
 [3]
 
 guilty of one count of selling and fiirnishing cocaine (§ 11352, subd. (a)), and acquitted him of one count of possession of cocaine (§ 11350, subd. (a)).
 
 [4]
 

 Subsequently, with respect to Perez, the trial court found two prior prison allegations (Pen. Code, § 667.5, subd. (b)) to be true and granted the prosecution’s motion to dismiss a third prior prison allegation. With respect to Onate, the trial court found true two prior prison allegations to be true.
 

 The trial court sentenced Perez to a total of seven years in state prison, consisting of the upper term of five years for selling/furnishing cocaine and consecutive one-year terms for each of the Penal Code section 667.5, subdivision (b), enhancements. The trial court imposed but stayed sentencing on Perez’s other two convictions pursuant to Penal Code section 654. The court also ordered Perez to pay a restitution fine of $200 pursuant to Government Code section 13967.
 

 The trial court sentenced Onate to a total prison term of six years, consisting of the middle term of four years for selling/furnishing cocaine and consecutive one-year terms for each of the prior prison term enhancements. The trial court also imposed a four-year concurrent term for selling/fumishing tar heroin. The trial court imposed but stayed sentencing on Onate’s other two convictions pursuant to Penal Code section 654.
 

 The trial court sentenced Abe to a total prison term of three years, consisting of the low term of three years for selling/furnishing tar heroin and a concurrent middle term of three years for possession of tar heroin.
 

 The trial court sentenced Villa to three years’ probation for selling/ furnishing cocaine, conditioned, among other things, on his serving two hundred forty-seven days in jail.
 

 
 *1318
 
 These four defendants appeal. The principal assignment of error is the trial court’s denial of the defendants’
 
 Wheeler
 

 [5]
 

 motions challenging the prosecution’s peremptory challenges of Hispanic jurors. All of the appellants make this assignment of error.
 

 All of the appellants also contend use of CALJIC No. 2.90 was reversible error.
 

 All of the appellants, with the exception of Villa, also contend they were improperly convicted of lesser included offenses.
 

 Onate contends her conviction for selling/furnishing tar heroin must be reversed because the trial court failed to instruct the jury that mere co-purchasers are not guilty of furnishing to each other. Villa joins this argument with respect to his conviction for selling/furnishing cocaine.
 

 Villa contends the trial court erred in denying his motion for new trial on the ground the verdict forms contained an “A.K.A.” for him.
 

 Perez contends the trial court erred in imposing a $200 restitution fine without holding a hearing on his financial ability to pay.
 

 Onate contends the trial court erred in failing to suspend criminal proceedings and institute civil commitment proceedings to the California Rehabilitation Center pursuant to Welfare and Institutions Code section 3051 in light of evidence she was addicted or in imminent danger of becoming addicted to narcotics.
 

 Facts
 

 On October 15, 1992, Ernesto Encinas, a detective with the San Diego Police Department, was assigned to the area of 700 East San Ysdrio as an undercover officer and told to make a purchase of narcotics. At approximately 4 p.m., he noticed a beige Cadillac containing two Hispanic males; standing near the vehicle and conversing with the occupants were Onate and Villa. After the Cadillac left the area, Onate and Villa approached Encinas. Onate asked Encinas where he had been and he responded he had been in jail. Encinas asked Onate if she had any “negra;” which is a street term for heroin, or “white,” which is a street term for cocaine. Onate responded that she and Villa also were looking for drugs and he should accompany them to get some. Villa suggested going to Burger King to seek out a seller, but Encinas told them there were too many “nares” there.
 

 
 *1319
 
 After some unsuccessful attempts to make contact with a seller, Onate flagged down a gray Chevrolet as the trio walked southbound on Cottonwood Avenue. Carlos Abe was the passenger; his brother, Robert Abe, was the driver. Onate told Carlos Abe they were looking for drugs; Carlos Abe responded he and his brother also were looking for drugs. Robert Abe volunteered to go to the house of “Popeye,” whom Encinas knew as a heroin dealer, and buy drugs for the trio if they gave him the money. Onate told the Abe brothers to get the drugs first and then “we’ll give you the money.” Carlos Abe agreed to this arrangement and said he and his brother would meet the trio in the park with the drugs.
 

 About 10 minutes after Onate, Villa and Encinas had been in the park, the Abe brothers arrived. Onate walked over to their Chevrolet, and, after a brief conversation, she returned to Villa and Encinas and suggested all three of them pool their money. Villa and Encinas each gave Onate $20. Carlos Abe got out of the car, and Onate took his place in the passenger seat before the Chevrolet drove away. Carlos Abe waited along with Villa and Encinas.
 

 Approximately 10 minutes later, the Chevrolet returned to the park, and the beige Cadillac that Encinas had noticed earlier also pulled up. The Cadillac was driven by Perez; Augustin Chaidez was a passenger. Villa walked over to the driver’s door of the Cadillac; Carlos Abe walked to the Chevrolet.
 

 After speaking to Perez, Villa returned to Encinas and said: “They got the white you want.” Encinas approached Perez, who asked him what he wanted. Encinas replied he wanted cocaine. Perez asked how much, and Encinas replied, “20.” Encinas handed Perez a prerecorded $20 bill. Perez pulled a paper bindle out of what appeared to be a ripped part of the headliner in the Cadillac and handed it to Chaidez. Chaidez got out of the Cadillac, walked over to the Chevrolet and gave the bindle to Onate. Chaidez told Encinas to “[g]et it from her.” When Encinas retrieved the bindle from Onate, she said: “I hope you’re going to give me some of that.” The bindle contained .08 grams of a substance containing cocaine.
 

 Meanwhile, Carlos Abe, sitting in the Chevrolet, had three paper bindles in his lap; he handed them to Onate. Onate gave one to Villa, one to Encinas and kept one for herself. Encinas then stepped away from the vehicle and signaled to surveillance officers to move in and arrest the participants.
 

 As the officers moved in, Perez drove off, and Onate dropped her bindle to the ground. Onate, Villa and Robert and Carlos Abe were immediately arrested. The bindle that Onate dropped was recovered, but the bindle that
 
 *1320
 
 she gave Villa was not recovered. The bindles that were recovered contained a total of .12 grams of a substance containing tar heroin.
 

 Police officers stopped the Cadillac a short distance from the park and arrested Perez and Chaidez.
 

 Discussion
 

 I
 

 Perez, Onate, Abe and Villa—all of whom are Hispanic—contend the trial court erred in denying their joint
 
 Wheeler
 
 motions after the prosecutor failed to adequately explain that her peremptory challenges of four Hispanic jurors were not a product of group bias. The contention is without merit.
 

 We begin with a detailed summary of the voir dire process as it relates to this assignment of error.
 

 During the first round of peremptory challenges, the following challenges occurred: the prosecutor challenged venirepersons Kaupke and Lorenzana and passed five times while the various defense counsel challenged venirepersons Pulido, Guaracha, Ranscon, Rohen, Egerton, Durzyk and Garrison. The prosecutor challenged venireperson Newman and passed once while the defense counsel removed venirepersons Murphy and Trinidad. A new panel of venirepersons was called who individually responded to the court questionnaire. Subsequently, the following challenges occurred: the prosecutor challenged venireperson Neill; the defense excused venireperson Gunn; the prosecutor passed; the defense excused venireperson Smith; the prosecutor challenged venireperson Garcia; the defense challenged venireperson Amon, and the prosecutor challenged venireperson Salazar. At that point, defense counsel requested a conference, and the following colloquy took place, outside the presence of the prospective jury panel:
 

 “The Court: . . . Ms. Rooney, you’ve excused two—I assume this is what your—two jurors in a row that have had Hispanic surnames, Garcia and Salazar, and there was the second juror you excused was Ms. Lorenzana. What is your rationale for the last two peremptory challenges?
 

 “Ms. Rooney: Your Honor, I take it by the court’s question that the court has found systematic exclusion?
 

 “The Court: Well, I assume that’s what the defense is going to argue.
 

 “Ms. Rooney: Your Honor, until the defense brings the motion and indicates what the problem is, I don’t know that the People have any duty to respond.
 

 
 *1321
 
 “The Court: Well, If I—have I stated the problem correctly?
 

 “Mr. Daley: You have.
 

 “Mr. Blakely: Sounds like it to me.
 

 “Mr. McGuigan: Particularly to the case, Ms. Garcia. I detected nothing that she stated one way or another—in fact, she stated almost nothing. In fact, I would indicate further that I think these two ladies are plainly Hispanic in origin.
 

 “Mr. Daley: I’d also point out, your Honor, I don’t know that there is any other Hispanic, except Ms. Pacheco, who remains on this jury.
 

 “Ms. Dedina: That’s correct.
 

 “The Court: All right. What’s—I mean, Ms. Salazar, I don’t remember her saying anything out of the ordinary which caused me to believe that she would favor one side or the other. I would like to know your rationale, Ms. Rooney.
 

 “Ms. Rooney: Your Honor, as to Ms. Salazar, the reason why I exclude her: that she is young. She is single. She has no jury experience. She has no life experience, in my opinion. [tJ[] And I believe that as to Ms. Garcia, that was one of the same reasons I kicked her in that she has no children. She is not married. She hasn’t been around which, I believe, is the same reason I kicked the lady from Coronado, and I have no idea what race she is. I’m trying to find my notes.
 

 “The Court: So you’re excusing young people that don’t have life experiences?
 

 “Ms. Rooney: Not necessarily young people, your Honor. I’m kicking people who have no life experience. And if they haven’t been around the block, I don’t think that they can sit on a jury and participate with jury deliberations and listen to attorneys.
 

 “Ms. Dedina: Your Honor, I would just like to state, having lived in this area a number of years, somebody who has lived in San Ysidro, even if they’re young, has—certainly has life experiences. I would state the same things for Ms. Garcia. I don’t think that’s a sufficient reason. A lot of people who are older who have lived in another part of the city may not have had
 
 *1322
 
 any life experiences that I would consider would be—constitute sufficient reason to have on a jury.
 

 “The Court: Tenuous. You have stated a reason that I guess is plausible, Ms. Rooney. I can understand. I mean, if that’s what you believe, I accept you at face value. Just because I disagree with you and all six defense lawyers disagree with you is not the test. I don’t find she has done it because of racial reasons so—
 

 “Mr. McGuigan: May I add one other thing, your Honor?
 

 “The Court: You can add it for the record. . . .
 

 Mr. McGuigan: . . . Ms. Cobb, your Honor, is a young, white single lady from Bonita who . . .
 

 “Mr. McGuigan:—And who happens to have a father who is a former police officer. I see absolutely nothing to distinguish her life experience from the two ladies who have already been challenged.
 

 “Ms. Rooney: She is very easy to distinguish in that she is a business student and she is a receptionist at a medical center. Anyone who works at a medical center deals with people on a daily basis.
 

 “The Court: All right. Then there, also, Ms. Martinez, juror number 21 with a Spanish surname, so she is a potential juror. All right. Let’s get the jurors back in, please.”
 

 After a defense challenge to venireperson Mirador, the prosecutor challenged venireperson Martinez. Defense counsel immediately indicated they wanted to renew their
 
 Wheeler
 
 motion, and the trial court said it would take up the motion the following morning. At that point, the trial court did not excuse venireperson Martinez. The proceedings were recessed for the evening.
 

 The next morning, outside the presence of the prospective jury panel, the trial court and counsel discussed the prosecutor’s challenge of Martinez in pertinent part as follows:
 

 “The Court: What is the basis for challenging Mrs. Martinez?
 

 “Ms. Rooney: Yes, your Honor. When Ms. Martinez was asked to answer the judge’s ten questions, she answered only two of them. She answered the
 
 *1323
 
 first and then she went directly to number six and she said that she was a party to a lawsuit and she stopped. Your Honor asked her the other questions and she didn’t respond. Your Honor had to ask her each and every individual question.
 

 “She—Ms. Martinez was in the second group of individuals to be questioned. None of the other jurors had any problems responding to your Honor’s questions, but this lady felt is so important that she was a member of this lawsuit that that was going to take priority over anything else that she had to answer. When you Honor asked the second question of: Was she married, then you continued to have to ask number three, number four, all the way down the list.
 

 “That is not the type of juror that I care to have sit in any trial that I’m having because if she can’t follow your orders she certainly is not going to pay attention to the law at a later time period when she is in with a group of jurors.
 

 “When this juror—or potential juror, Cecilia Martinez, was asked her occupation, she said she was in sales. I had requested, when she was outside the room, that the court inquire as to what she did for sales. When she came back into the room, her response to your Honor was, again, that she was in sales. You prodded her further and she responded that she sold clothing. Again, you prodded her further as to where she worked and she refused to answer.
 

 “If a person has such a problem with answering such a simple question of where they’re employed, this is not an individual who is going to be conducive to reaching a decision with—with 12 other individuals. She is biased against the court system for some reason because of this civil suit that she has in regards to her employer and feels that she is above the law. This is not an individual who is conducive to being unbiased in a jury trial where she is going to have to participate with other individuals.
 

 “The Court: All right. The court does feel that there’s a justifiable right to exercise a peremptory challenge against Ms. Martinez based on her refusals to answer fully the question propounded to her. She takes an oath to answer fully the questions directed to her in the voir dire process, and she has not complied with that—with that oath. I think she would be subjected to a challenge for cause.
 

 “If somebody—either side had requested that she be challenged for cause, I would have granted it. So under the circumstances, I don’t think she meets the test. . . .”
 

 
 *1324
 
 After the jury selection reconvened, there was a defense challenge to venireperson Bernal, and the prosecutor challenged venireperson Manglicmot. A new panel of prospective jurors was called and individually questioned. Thereafter, the following challenges were made: defense counsel challenged venireperson Tasem; the prosecutor challenged venireperson Allen; defense counsel challenged venireperson Roth; the prosecutor passed; defense counsel challenged venireperson Stanczak, and the prosecutor challenged venireperson Torres. Outside the presence of the prospective jury panel, defense counsel renewed their joint
 
 Wheeler
 
 motion and the following colloquy ensued:
 

 “Ms. Dedina: Yes. I would like to renew the Wheeler motions. Ms.—Mr. Torres was a Mexican-American and was challenged by the prosecution. I think this continues a pattern of systematic exclusion based on race.
 

 “Mr. McGuigan: If I could join in the motion, your Honor. And I would add: Mr. Torres told us a number of things, but they seemed to be pretty evenly balanced and has been the victim of a burglary. He’s had several burglaries. In fact, he is a teacher who apparently is—of some drug program. It seemed to me that I didn’t see anything that was dramatically one side or the other, except that he was rather dramatically a Mexican person. So I would join in the motion.
 

 “Mr. Daley: Also join.
 

 “Mr. Rodriguez: I also join.
 

 “Mr. Ulovec: I join.
 

 “The Court: Well, you know, the court’s in a position now where I found the prima facie—or I made the prima facie which has shifted the burden to Ms. Rooney before. And, now, on its face, we have another Mexican-American middle-aged family man, as I recall. I can’t recall whether he had children.
 

 “Ms. Dedina: Yes, he does, two children.
 

 “The Court: Two children, wearing a coat and tie, apparently has been a teacher for quite some time, involved in a lawsuit with the school system or claim because he feels he was apparently not promoted like he wanted to. Now, he is a teacher, used to be an assistant principal. You’ll have to articulate for me some justifiable reason for excusing this person.
 

 “Ms. Rooney: Yes, your Honor. Mr. Torres was seated approximately six feet away from me as I was watching the panel when your Honor read the
 
 *1325
 
 general questions that you gave the entire group in this second panel. When you asked the question about if the defendant did not take the stand would that necessarily mean that you would find him guilty, Mr. Torres’ head shook back and forth and he gave a little bit of a laugh out loud.
 

 “Mr. Torres then, when questioned individually, when asked about his jury service, indicated that he had been on a D.U.I. He went ahead to volunteer, as opposed to the court’s request, to indicate that he had found ‘not guilty.’ He is an individual who can find not guilty having been in the position that he was in.
 

 “And he indicated that he was demoted from principal to teacher. There has to be some reason before someone is going to be demoted from a principal position. I don’t know what that is, but it’s not a positive picture, in my mind. When he was demoted, he fought that, which means he is willing to fight the rest of the 11 jurors if he were chosen to sit.
 

 “The Court: Well, as I view this Wheeler law, it turns a lot on the credibility of the prosecutor, you know. The court has to make up it’s [sr'c] mind as to whether the prosecutor is, in fact, articulating valid reasons which she or he believes in or just making up things to—
 

 “Mr. Rodriguez: I may add one thing, your Honor. I think Ms. Rooney did have an opportunity to request the court to ask further questions of this witness, and I noticed she never did.
 

 “The Court: Well, you know—
 

 “Mr. Rodriguez: When we all—other of us had concerns about other potential jurors here, well, we have offered further clarifying questions. Rather than accept her reasons, I would be much more comfortable if she had proposed to the court that these—this man be questioned.
 

 “The Court: At some point, Ms. Rooney, the court is going to have to—I mean, your credibility is put in issue each time and on—when one of these motions is brought, I believe you’re articulating a reason that you believe in, that you’re not fabricating it, but now we’ve got four Mexican-Americans that have been excused by you.” The trial court again denied the
 
 Wheeler
 
 motion.
 

 In
 
 People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d 258, 276, the California Supreme Court held that peremptory challenges may not be used to remove prospective jurors solely on the basis of presumed group bias, that is, a
 
 *1326
 
 presumption that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic or similar grounds. (See also
 
 Batson
 
 v.
 
 Kentucky
 
 (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] [peremptory challenges based solely on race violated the federal equal protection clause where defendant is member of race being challenged];
 
 Powers
 
 v.
 
 Ohio
 
 (1991) 499 U.S. 400 [113 L.Ed.2d 411, 111 S.Ct. 1364] [defendant, regardless of race, has standing to object to racially discriminatory use of peremptory challenges].)
 

 “We begin with the proposition that in any given instance the presumption must be that a party exercising a peremptory challenge is doing so on a constitutionally permissible ground.”
 
 (People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d at p. 278.) This presumption is rebuttable, however.
 

 The applicable rules for
 
 Wheeler
 
 motions were set forth in
 
 People
 
 v.
 
 Fuentes
 
 (1991) 54 Cal.3d 707, 714-715 [286 Cal.Rptr. 792, 818 P.2d 75], as follows:
 

 “If a party believes an opponent is improperly using peremptory challenges for a discriminatory purpose, that party must make a timely objection and a prima facie showing that the jurors are being excluded on the basis of group bias. [Citation.] To establish a prima facie case, the moving party should first make as complete a record as possible; second, the moving party must establish that the persons excluded are members of a cognizable group; and third, the moving party must show a strong likelihood that the persons are being excluded because of group association. [Citations.] Once the moving party has established a prima facie case, the burden shifts to the other party to come forward with a race-neutral explanation related to the particular case to be tried. [Citations.]
 

 “This court and the high court have professed confidence in trial judges’ ability to determine the sufficiency of the prosecutor’s explanations. In
 
 Wheeler,
 
 we said that we will ‘rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination.’
 
 (Wheeler, supra,
 
 22 Cal.3d at p. 282.) Similarly, the high court stated in
 
 Batson
 
 v.
 
 Kentucky, supra,
 
 that ‘the trial judge’s findings in the context under consideration here largely will turn on evaluation of credibility,’ and for that reason ‘a reviewing court ordinarily should give those findings great deference.’ (476 U.S. at p. 98, fn. 21 [90 L.Ed.2d at p. 89].)
 

 “In
 
 People
 
 v.
 
 Johnson
 
 [(1989) 47 Cal.3d 1194 (255 Cal.Rptr. 569, 767 P.2d 1047)], reemphasized the need for a ‘standard of truly giving great
 
 *1327
 
 deference to the trial court in distinguishing bona fide reasons from sham excuses.’ (47 Cal.3d at p. 1221.) We disapproved the approach taken earlier in
 
 People
 
 v.
 
 Trevino
 
 (1985) 39 Cal.3d 667 [217 Cal.Rptr. 652, 704 P.2d 719], in which we had disallowed subjective reasons for peremptory challenges and had engaged in a comparative analysis of various jurors’ responses to evaluate the bona tides of the prosecutor’s stated reasons. We disapproved the
 
 Trevino
 
 approach because nothing in
 
 Wheeler
 
 disallows reliance on the prospective jurors’ body language or manner of answering questions as a basis for rebutting a prima facie case, and because comparative analysis of jurors unrealistically ignores ‘the variety of factors and considerations that go into a lawyer’s decision to select certain jurors while challenging others that appear to be similar.’ (47 Cal.3d at pp. 1219, 1220.)
 

 “We reaffirmed in
 
 People
 
 v.
 
 Johnson, supra,
 
 47 Cal.3d 1194, however, that the trial court must make ‘ “a sincere and reasoned” ’ attempt to evaluate the prosecutor’s justifications.
 
 {Id.
 
 at p. 1216, citing
 
 People
 
 v.
 
 Hall
 
 [(1983)] 35 Cal.3d 161, 167-168 [197 Cal.Rptr. 71, 672 P.2d 854].) Furthermore, every questioned peremptory challenge must be justified: ‘If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted’ and the court must dismiss the venire and begin jury selection anew.
 
 {Wheeler, supra,
 
 22 Cal.3d at p. 282.)
 
 Batson
 
 has been interpreted to afford the same relief.”
 

 Here, the issue is whether the trial court’s acceptance of the prosecutor’s proffered explanations for challenging venirepersons Garcia, Salazar, Martinez and Torres as bona fide justifications was legally correct. We conclude it was.
 

 The trial court’s duty is to inquire and evaluate.
 
 {People
 
 v.
 
 Hall
 
 (1983) 35 Cal.3d 161, 168 [197 Cal.Rptr. 71, 672 P.2d 854].) After the prosecutor has offered his or her reasons supporting the exercise of the questioned peremptory challenge, the trial court must make a “sincere and reasoned attempt to evaluate the prosecutor’s explanation” to determine whether the proffered reasons are bona fide.
 
 {Id.
 
 at p. 167.)
 

 In
 
 People
 
 v.
 
 Jackson
 
 (1992) 10 Cal.App.4th 13, 19 [12 Cal.Rptr.2d 541], the Court of Appeal concluded that the appropriate appellate standard of review is the substantial evidence test. The Court of Appeal summarized its holding as follows: “In summary, when the moving party has made a prima facie showing of group bias in the exercise of peremptory challenges, and the opposing party has offered an explanation for the challenges which on its face is free of group bias, the issue presented to the trial court is one of fact.
 
 *1328
 
 Accordingly, its ruling on the motion will be upheld on appeal if it is supported by substantial evidence, unless the record indicates that the trial court misunderstood the nature of its obligations under
 
 Wheeler,
 
 or otherwise based its ruling on something other than a resolution of that factual issue.”
 
 (Id.
 
 at p. 23.)
 

 We consider the prosecutor’s four challenges of Hispanics seriatim since “[i]f a single peremptory challenge of a prospective juror in the subject cognizable group is not justified, the presumption of systematic exclusion is not rebutted.”
 
 (People
 
 v.
 
 Gonzalez
 
 (1989) 211 Cal.App.3d 1186, 1193 [259 Cal.Rptr. 870].)
 

 The prosecutor challenged venireperson Garcia, a college student studying health science, and venireperson Salazar, a college student with a liberal arts major, because they were single people without significant life experience. Appellants all argue the prosecutor’s explanation for challenging Garcia and Salazar was a mere pretext, not supported by substantial evidence. We disagree.
 

 Limited life experience is a race-neutral explanation. In
 
 People
 
 v.
 
 Sims
 
 (1993) 5 Cal.4th 405, 429 [20 Cal.Rptr.2d 537, 853 P.2d 992], the Supreme Court rejected a claim of
 
 Wheeler
 
 error involving four Black prospective jurors, including one whom the prosecutor said “appeared too young and to lack sufficient experience in exercising responsibility.” The
 
 Sims
 
 court stated “. . . the prosecutor’s stated justifications were facially race-neutral, based upon a perception of a ‘specific’ or individual bias of each juror rather than a group bias, and thus afforded a constitutionally permissible basis for the exercise of the peremptory challenges in question.”
 
 (Id.
 
 at p. 430.) It does not matter that the trial court thought it was a “tenuous” explanation because the court ultimately found the explanation “plausible.” More importantly, the trial court found the prosecutor credible on this point, namely that the limited life experience of Garcia and Salazar, and not their Hispanic origin, was the reason they were challenged.
 

 There is substantial evidence in the record to support the prosecutor’s explanation of limited life experience. During voir dire, both Garcia and Salazar responded to the question in the questionnaire regarding occupation by saying they were college students. Both also said they did not have children, had never served on a jury, been a crime victim, or a party to a law suit and had no involvement in law enforcement.
 

 Appellants argue that the fact that the prosecutor did not challenge other non-Hispanic venirepersons who were college students demonstrates the
 
 *1329
 
 prosecutor’s limited life experience explanation was a sham. As indicated above, in the lengthy excerpt quoted from
 
 People
 
 v.
 
 Fuentes, supra,
 
 54 Cal.3d 707, 714-715, while such comparative analysis of various jurors’ responses to evaluate the bona fides of the prosecutor’s stated reasons once may have been allowed, it is now disapproved. (See
 
 People
 
 v.
 
 Johnson
 
 (1989) 47 Cal.3d 1194, 1220 [255 Cal.Rptr. 569, 767 P.2d 1047] [“use of a comparison analysis to evaluate the bona fides of the prosecutor’s stated reasons for peremptory challenges does not properly take into account the variety of factors and considerations that go into a lawyer’s decision to select certain jurors while challenging others that appear to be similar.”].) Moreover, in this case the factual basis for appellants’ argument simply is lacking; that is the prosecutor
 
 did
 
 use her peremptory challenges on other venirepersons who were young and single and whose voir dire indicated limited life experiences. For example, the prosecutor challenged venireperson Newman, a single Coronado resident studying child development. The prosecutor also challenged venireperson Lorenzana, a nursing major at Southwestern College. The prosecutor challenged Newman and Lorenzana before she challenged Garcia and Salazar. Subsequently, the prosecutor challenged venireperson Maglicmot, a single National City student attending Southwestern College. None of these challenged persons (Newman, Lorenzana or Maglicmot) was Hispanic.
 
 [6]
 
 In short, we find there was substantial evidence to support the trial court’s finding that the prosecutor’s stated reasons for challenging Garcia and Salazar were bona fide.
 
 (People
 
 v.
 
 Jackson, supra,
 
 10 Cal.App.4th 13, 23.) There was no error in denying the
 
 Wheeler
 
 motion.
 

 As to venireperson Martinez, the prosecutor cited the prospective juror’s failure to answer many of the questions on the questionnaire despite the court’s instructions. The prosecutor expressed concern that Martinez, who at the time was suing her employer, might harbor bias against the court system. The prosecutor also opined Martinez would not work well with other jurors. The record bears out that Martinez was unique among her fellow venirepersons in her reluctance to answer various questions on the questionnaire. The trial court needed to prod her to get answers to a number of questions, something that was not necessary for any other prospective juror. These are race-neutral explanations. The trial court found them applicable
 
 *1330
 
 here. The trial court also implicitly found the prosecutor credible. Accordingly, there was no error.
 
 [7]
 

 With respect to venireperson Torres, the prosecutor noted a personal observation she had made concerning Torres’s laughing at an inappropriate point during voir dire. The prosecutor also noted that despite the court’s instruction that venirepersons with prior jury experience should not reveal the nature of the verdict they had reached, Torres volunteered his jury had acquitted the defendant in a drunk driving case. The prosecutor also opined that Torres might be inclined to be a sole holdout. Obviously, we cannot, on the cold record, verify the prosecutor’s first stated reason for challenging Torres.
 
 [8]
 
 This is, of course, one reason why appellate courts in this area of law generally give great deference to the trial court, which saw and heard the entire voir dire proceedings. As the United States Supreme Court noted in
 
 Batson, supra,
 
 476 U.S. 79, 98, footnote 21 [90 L.Ed.2d 69, 88]: “Since the trial judge’s findings in the context under consideration here largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.” In any event, the reasons stated by the prosecutor for challenging Torres, including her first stated reason, are race neutral. Here, the trial court explicitly found the prosecutor credible with respect to her stated reasons for challenging Torres. Again, there was no error in denying the
 
 Wheeler
 
 motion.
 

 II-VH
 
 *
 

 Disposition
 

 As to Villa, the judgment is affirmed in its entirety.
 

 
 *1331
 
 As to Perez, the trial court is ordered to strike his conviction of possession of cocaine (§ 11350, subd. (a)) and amend the abstract of judgment accordingly. In all other respects, the judgment as to Perez is affirmed.
 

 As to Onate, the trial court is ordered to strike her conviction of possession of cocaine (§ 11350, subd. (a)) and her conviction of possession of tar heroin (§ 11350, subd. (a)), and amend the abstract of judgment accordingly. In all other respects, the judgment as to Onate is affirmed.
 

 As to Abe, the trial court is ordered to strike his conviction of possession of tar heroin (§ 11350, subd. (a)), and amend the abstract of judgment accordingly. In all other respects, the judgment as to Abe is affirmed.
 

 Nares, J., and Di Figlia, J.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied November 16,1994, and appellants’ petition for review by the Supreme Court was denied Feburary 1, 1995.
 

 [2]
 

 All further statutory references are to the Health and Safety Code unless otherwise specified.
 

 [3]
 

 The record shows Florencio Triana Rodriguez used the alias “Daniel Villa.” Rodriguez will be referred to as Villa in this appeal.
 

 [4]
 

 The jury also returned verdicts on two other defendants, who are not parties to this appeal.
 

 [5]
 

 People
 
 v.
 
 Wheeler
 
 (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748],
 

 [6]
 

 Furthermore, of the four non-Hispanic venirepersons (Gee, Roth, Cobb and Trinidad) who appellants say were not challenged by the prosecutor despite having similar backgrounds to Garcia and Salazar, that is, they were students with limited life experience, three of them (Gee, Roth and Trinidad) were challenged by the defense while the prosecutor still had peremptory challenges remaining. We also note that the prosecutor, when specifically questioned why she had not challenged venireperson Cobb, distinguished Cobb because she was a part-time receptionist in a medical office, remarking “[a]nyone who works at a medical center deals with people on a daily basis.”
 

 [7]
 

 The trial court’s statement that prospective juror Martinez would be subjected to a challenge for cause was not a proper articulation of the standard for a
 
 Wheeler
 
 motion. (See
 
 People
 
 v.
 
 Tapia
 
 (1994) 25 Cal.App.4th 984, 1014, 1015, 1019 [30 Cal.Rptr.2d 851].) However, this case is not like
 
 Tapia
 
 where “. . . the trial court was completely unaware of its obligations under
 
 Wheeler.” {Id.
 
 at p. 1016.) Here, the trial court, was not similarly handicapped. The record here demonstrates in each instance, including Martinez, the trial court considered whether the prosecutor’s stated reasons were valid and actually prompted the challenge. In each instance, the trial court amply fulfilled its obligation to inquire and evaluate.
 
 {People
 
 v.
 
 Hall, supra,
 
 35 Cal.3d 161, 168.)
 

 [8]
 

 Peremptory challenges based on counsel’s personal observations are not improper. As the California Supreme Court observed in
 
 People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d 258, 275: “Indeed, even less tangible evidence of potential bias may bring forth a peremptory challenge: either party may feel a mistrust of a juror’s objectivity on no more than the ‘sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another’ (4 Blackstone, Commentaries 353)—upon entering the box the juror may have smiled at the defendant, for instance, or glared at him.”
 

 *
 

 See footnote
 
 1, ante,
 
 page 1313.
 

 *
 

 Judge of the San Diego Superior Court sitting under assignment by the Chairperson of the Judicial Counsel.