[No. E009504. Fourth Dist., Div. Two. Oct. 9, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN DWAYNE JACKSON, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B.

**COUNSEL**

A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne, Janelle Davis and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McKINSTER, J.**—Following a jury trial, the defendant was found guilty on one count of selling a controlled substance, cocaine, in violation of Health and Safety Code section 11352, subdivision (a). On appeal, the defendant alleges that the trial court erred in refusing to dismiss the jury panel and to start jury selection anew pursuant to *People* v. *Wheeler* (1978) 22 Cal.3d 258

[148 Cal.Rptr. 890, 583 P.2d 748]. Finding no reason to disturb the trial court's ruling on the *Wheeler* motion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant is a Black man. Included in the initial venire panel were at least six Black venirepersons. While the exact racial composition of the final jury that tried and convicted the defendant cannot be determined from the record on appeal, it is evident from the record that the jury included at least one Black woman.

At the initial stages of the voir dire, the court inquired of the members of the venire whether it would be an undue hardship on anyone to serve as a juror at the time. One of the potential jurors who was Black informed the court that he was in the Air Force and therefore might be deployed in Operation Desert Shield. Both parties stipulated to excuse him from the panel.

During the voir dire, numerous peremptory challenges were exercised by both parties. Of those, three were exercised against Black venirepersons. The first peremptory challenge exercised against a Black venireperson, Patricia Newberry, was by the prosecutor. The defendant then exercised a peremptory challenge against another Black venireperson, Jacqueline Hutchison. Finally, a third Black venireperson, Harriet Wilson, was peremptorily challenged by the prosecutor.

Immediately after the excusal of prospective juror Wilson, the defendant raised his *Wheeler* motion, alleging that the prosecutor's use of peremptory challenges against Newberry and Wilson had been based solely on their race. In response the court asked the prosecutor whether she wished to explain. The prosecutor then presented racially neutral reasons which had allegedly prompted her to challenge those two prospective jurors. The court accepted the prosecutor's explanation and denied the motion.

## DISCUSSION

On appeal, the defendant claims that the trial court erred in failing to grant his *Wheeler* motion. In particular, the defendant alleges that he had made a prima facie showing that the prosecutor's peremptory challenges against Newberry and Wilson were based on group bias and the prosecutor failed to satisfactorily rebut such a showing.

■ The purpose of peremptory challenges is to allow a party to exclude prospective jurors who the party believes may be consciously or unconsciously biased against him or her. (*People* v. *Wheeler, supra,* 22 Cal.3d at p.

275.) However, the use of peremptory challenges to remove prospective jurors from the panel *solely* on the basis of group bias[1] violates the right of the defendant to a jury drawn from a representative cross-section of the community. (*Id.*, at pp. 276-277; *Batson* v. *Kentucky* (1986) 476 U.S. 79, 89 [90 L.Ed.2d 69, 83, 106 S.Ct. 1712].)

■ There is a rebuttable presumption that "a party exercising a peremptory challenge is doing so on a constitutionally permissible ground." (*People* v. *Wheeler*, *supra*, 22 Cal.3d at p. 278.) If a party believes that a peremptory challenge is being used unconstitutionally because it is being exercised on the basis of group bias, such a party must timely object and establish a prima facie case for group bias. "First, . . . [the objecting party] should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (*Id.*, at p. 280, fn. omitted.)

If the court finds that a prima facie case has been made, then the burden shifts to the other party to show that its challenge was based on reasons other than group bias. To sustain this burden, the allegedly offending party must satisfy the court that he exercised the peremptory challenges on grounds that were reasonably relevant to the issues, parties, or witnesses in the particular case on trial, i.e., for specific bias. (22 Cal.3d at p. 281-282.)

## A. *Standard of Review*

■ In *Wheeler*, our Supreme Court set forth a relatively amorphous standard for appellate review of motions challenging the basis of peremptory challenges. Regarding the prima facie showing, the Supreme Court simply stated that "[w]e are confident of [the trial courts'] ability to distinguish a true case of group discrimination by peremptory challenges from a spurious claim interposed simply for purposes of harassment or delay." (22 Cal.3d at p. 281.) Similarly, when determining whether the trial court was correct in accepting or rejecting the prosecutor's explanation behind his or her peremptory challenges, the reviewing court shall once again "rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination." (*Id.*, at p. 282.)

---

[1]Group bias is the presumption that "certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds . . . ." (*Wheeler*, *supra*, 22 Cal.3d at p. 276.)

Subsequent opinions of the Supreme Court do not significantly clarify the nature or extent of that deferential reliance. In *People* v. *Trevino* (1985) 39 Cal.3d 667 [217 Cal.Rptr. 652, 704 P.2d 719], the majority sought to restrict the scope of that deference by prohibiting trial courts from accepting prosecutors' explanations which rely on subjective facts such as the prospective juror's body language and mode of answering questions. (*Id.*, at p. 692, fn. 25.) However, in *People* v. *Johnson* (1989) 47 Cal.3d 1194 [255 Cal.Rptr. 569, 767 P.2d 1047], the court rejected that approach (*id.*, at p. 1219) and expressly readopted "a standard of truly giving great deference to the trial court in distinguishing bona fide reasons from sham excuses." (*Id.*, at p. 1221.)

■ "Great deference" is not one of the three primary standards of review which guide appellate courts: substantial evidence, abuse of discretion, and independent or de novo review. Of these, the first two "entail considerable deference" to the decision of the trial court. (*Department of Parks & Recreation* v. *State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 [284 Cal.Rptr. 839].)[2] However, the substantial evidence and abuse of discretion tests define the extent of that deference in different ways. Under the substantial evidence test, the appellate court shall defer to the trial court so long as "substantial evidence supports the conclusion of the trier of fact . . . ." (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) On the other hand, under the abuse of discretion test, we defer to the decision of the lower tribunal "*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People* v. *Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].)

*Wheeler, Johnson,* and the cases following them do not expressly identify which of these two tests is to be used to determine the nature and extent of deference afforded to *Wheeler* rulings.[3] Based on the following discussion, we conclude that the "great deference" standard of review is an application of the substantial evidence test.

■ Factual issues are those which concern the establishment of historical or physical facts. (*Crocker National Bank* v. *City and County of San*

---

[2]By contrast, the de novo standard, used to review a lower tribunal's resolution of issues of law, is nondeferential. (*People* v. *Louis* (1986) 42 Cal.3d 969, 985 [232 Cal.Rptr. 110, 728 P.2d 180].)

[3]See, e.g., *People* v. *Sanders* (1990) 51 Cal.3d 471, 501 [273 Cal.Rptr. 537, 797 P.2d 561]; *People* v. *Fuentes* (1991) 54 Cal.3d 707, 714, 720 [286 Cal.Rptr. 792, 818 P.2d 75]; *People* v. *Gonzalez* (1989) 211 Cal.App.3d 1186, 1192-1193 [259 Cal.Rptr. 870]; *People* v. *Harper* (1991) 228 Cal.App.3d 843, 848 [279 Cal.Rptr. 204]; *DiDonato* v. *Santini* (1991) 232 Cal.App.3d 721, 739, 742, fn. 8 [283 Cal.Rptr. 751]. But cf. *People* v. *King* (1987) 195 Cal.App.3d 923, 936 [241 Cal.Rptr. 189] (dis. opn. of Poché, J.).

*Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) Factual issues also include those which can only be resolved through the decision maker's "application of experience with human affairs" (*ibid.*), such as the evaluation of the credibility of a witness (*Michael Distributing Co.* v. *Tobin* (1964) 225 Cal.App.2d 655, 661 [37 Cal.Rptr. 518]).

 In ruling on a *Wheeler* motion, the decisive issue facing the trial court is whether "the peremptory challenges in question were . . . predicated on group bias alone." (*Wheeler, supra,* 22 Cal.3d at p. 281.) This is "a question of historical fact." (*Hernandez* v. *New York* (1991) 500 U.S. __, __ [114 L.Ed.2d 395, 411, 111 S.Ct. 1859].) Moreover, since the responding party is unlikely to admit any discriminatory motive, the resolution of that issue " 'largely will turn on evaluation of credibility . . . .' " (*People* v. *Johnson, supra,* 47 Cal.3d at p. 1221, quoting from *Batson* v. *Kentucky, supra,* 476 U.S. at p. 98, fn. 21 [90 L.Ed.2d at p. 89].) Accordingly, regardless of which definition of "factual issue" is applied, the issue presented to the trial court by a *Wheeler* motion is factual. ██ █ The Supreme Court expressly acknowledged the nature of the *Wheeler* issue in *Johnson,* when it concluded that under the circumstances before it, it saw "no good reason to second-guess [the trial court's] *factual determination.*" (*People* v. *Johnson, supra,* 47 Cal.3d at p. 1221, italics added; accord *People* v. *Sanders, supra,* 51 Cal.3d at p. 501 [same]; see also *People* v. *Trevino, supra,* 39 Cal.3d at p. 700 (dis. opn. of Kaus, J.) [criticizing the majority for "assuming the crucial fact-finding role"].)[4]

 A trial court's resolution of a question of fact is reviewed under the substantial evidence test. (*People* v. *Mickey* (1991) 54 Cal.3d 612, 649 [186 Cal.Rptr. 801, 818 P.2d 84].) The primary reason for deferring to the trial court's factfinding ability is that the resolution of conflicting evidence will necessarily depend upon the relative credibility of the witnesses offering that evidence. The trier of fact is the sole judge of that credibility (*Estate of Teel* (1944) 25 Cal.2d 520, 526 [154 P.2d 384]), because only the trier of fact has the opportunity to observe and hear the witnesses. By contrast, an appellate court has nothing but the cold written record of the words spoken, which "cannot give the look or manner of the witnesses; their hesitations, their doubts, their variations of language, their precipitancy, their calmness or consideration. A witness may convince all who hear him testify that he is disingenuous and untruthful, and yet his testimony, when read, may convey

---

[4]Of course, the trial court need not reach this ultimate factual issue if the explanation given for the exercise of the challenges, on its face, indicates a group bias. "[T]he issue whether a given explanation constitutes a constitutionally permissible—i.e., nondiscriminatory—justification for the particular peremptory challenge remains a question of law." (*People* v. *Turner* (1986) 42 Cal.3d 711, 720, fn. 6 [230 Cal.Rptr. 656, 726 P.2d 102].)

a most favorable impression." (*Maslow* v. *Maslow* (1953) 117 Cal.App.2d 237, 243 [255 P.2d 65], overruled on another ground in *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 287, fn. 3 [137 Cal.Rptr. 635, 562 P.2d 316].)

■ Not coincidentally, the Supreme Court cited identical considerations when it explained why a trial court's ruling on a *Wheeler* motion must be given "great deference": "[T]he very dynamics of the jury selection process make it difficult, if not impossible, on a cold record to evaluate or compare the peremptory challenge of one juror with the retention of another juror which on paper appears to be substantially similar. [An attempt to do so would be] highly speculative and less reliable than the determination made by the trial judge who witnessed the process by which the defendant's jury was selected" (*People* v. *Johnson, supra,* 47 Cal.3d at p. 1221) and who witnessed the prosecutor's explanation of his or her reason for exercising peremptory challenges against particular potential jurors. "Because the trial court's assessment of these explanations rests largely upon evaluations of credibility, both [the California and United States Supreme Courts] generally give such assessments great deference." (*People* v. *Pride* (1992) 3 Cal.4th 195, 230, fn. 10 [10 Cal.Rptr.2d 636, 833 P.2d 643].)

There is another characteristic of the substantial evidence standard which parallels the "great deference" standard associated with *Wheeler* motions. ■ When employing the substantial evidence test, an appellate court may reject the testimony of a witness who was apparently believed by the trier of fact if that testimony is inherently improbable or impossible of belief. (*Evje* v. *City Title Ins. Co.* (1953) 120 Cal.App.2d 488, 492 [261 P.2d 279].) ■ The same concept applies to the review of a trial court's *Wheeler* ruling. While an appellate court will ordinarily defer to a trial court's evaluation of credibility, " 'ordinarily' does not mean 'inevitably': in some cases the reviewing court may conclude that the explanation is inherently implausible in light of the whole record" (*People* v. *Turner, supra,* 42 Cal.3d at p. 720 fn. 6), and reject the lower courts' factual determination for that reason.

Our conclusion that rulings on *Wheeler* motions are factual determinations which are properly reviewed by applying the substantial evidence test is corroborated by pronouncements of the United States Supreme Court regarding the proper standard of review applicable to motions brought pursuant to *Batson* v. *Kentucky, supra.*[5]

---

[5]Procedurally, *Batson* and *Wheeler* motions are essentially the same. (*People* v. *Turner, supra,* 42 Cal.3d at p. 717.)

Recently, that court reviewed the denial of a *Batson* motion by applying the "clearly erroneous" test, under which an appellate court must "decline to overturn the state trial court's finding on the issue of discriminatory intent unless convinced that its determination was clearly erroneous." (*Hernandez* v. *New York, supra,* 500 U.S. at p. ___ [114 L.Ed.2d at p. 412].) However, " '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' [Citation.]" (*Id.,* at p. ___ [114 L.Ed.2d at p. 412].) Thus, despite the different label and phraseology, there is no practical difference between the federal "clearly erroneous" test and a substantial evidence standard of review. (*United States* v. *Delerme* (3d Cir. 1972) 457 F.2d 156, 160; accord, *People* v. *Mickey, supra,* 54 Cal.3d at p. 649.)

As previously mentioned, the abuse of discretion standard of review is also a deferential standard. However, this standard would not be appropriate for reviewing *Wheeler* motions. Unlike a substantial evidence standard where the central issue is whether there is reasonable and credible evidence to support the trial court's findings, an abuse of discretion standard "measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria. . . . Thus, one deals with evidentiary proof while the other is concerned with legal principles." (*Department of Parks & Recreation* v. *State Personnel Bd., supra,* 233 Cal.App.3d at p. 831.)

In ruling on a *Wheeler* motion, a trial court has no "range" of options. If the prosecutor's explanation is disbelieved then the court must grant the motion and begin jury selection anew. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 282.) Conversely, if the trial court finds the prosecutor's explanation credible and supportive of his or her peremptory challenges independent of group bias, the court must deny the motion as was done here. ▮▮ Once the factual issue is decided, the trial court's disposition of the motion is mandatory, not discretionary.[6]

---

[6]Discretion as defined in Webster is "the freedom or authority to make decisions and choices." (Webster's New World Dict. (3d college ed. 1988) p. 392.) In this broad sense, every decision made by a fact finder entails the freedom to decide between different choices. Whether or not to accept one party's explanation over another is an example of this broad discretion exercisable by a fact finder. However, discretion in this literal sense is not equivalent to discretion in the legal sense. Legal discretion is defined as "[t]he exercise of discretion where there are two alternative provisions of law applicable, under either of which the court could proceed." (Black's Law Dict. (6th ed. 1990) p. 467, col. 1.) In this regard, the trial court has no legal discretion upon finding that the prosecutor has or has not sustained its burden of justification.

 The rule that the trial court's decision on a *Wheeler* motion will be upheld if supported by substantial evidence is subject to the limitation that the substantial evidence standard obviously has no application when the ruling was not based upon a finding of fact. Accordingly, in reviewing *Wheeler* rulings, the appellate court must consider whether the trial court has made "a sincere and reasoned determination regarding the genuineness of the prosecutor's reason." (*People* v. *Johnson, supra,* 47 Cal.3d at p. 1222; accord, *People* v. *Hall* (1983) 35 Cal.3d 161, 167-168 [197 Cal.Rptr. 71, 672 P.2d 854].) If it appears that the trial court did not actually make such an inquiry, the ruling cannot be upheld.

A trial court could not have made the proper factual inquiry unless it understood "its obligation to evaluate the prosecutor's explanations" (*Johnson, supra,* 47 Cal.3d at p. 1218) and also "understood the distinction between specific and group bias and had that distinction in mind when it made its ruling" (*id.,* at p. 1222). For example, in *People* v. *Hall, supra,* 35 Cal.3d 161, the Supreme Court reversed a conviction where the record showed that the trial court misunderstood its obligation under *Wheeler.* There, the trial judge had denied the motion after stating that a " 'peremptory challenge is a peremptory challenge, otherwise, it's meaningless,' " and expressing the erroneous belief that "systematic exclusion of a class of potential jurors occurs only when the prosecutor announces an intent to keep all members of that group off the jury." (*Hall, supra,* at pp. 165-166, fns. omitted.)

In summary, when the moving party has made a prima facie showing of group bias in the exercise of peremptory challenges, and the opposing party has offered an explanation for the challenges which on its face is free of group bias, the issue presented to the trial court is one of fact. Accordingly, its ruling on the motion will be upheld on appeal if it is supported by substantial evidence, unless the record indicates that the trial court misunderstood the nature of its obligations under *Wheeler,* or otherwise based its ruling on something other than a resolution of that factual issue.

B. *Substantial Evidence Supports the Ruling.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante,* page 13.

## DISPOSITION

The judgment is affirmed.

Dabney, Acting P. J., and McDaniel J.,* concurred.

---

*Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.