Darryl TOLBERT, Petitioner–Appellant,

v.

James H. GOMEZ, Director; William Duncan, Warden; Attorney General of the State of California, Respondents–Appellees.

No. 97–55004.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1998.

Decided Aug. 20, 1999.

Michael B. Dashjian, Law Offices of Michael B. Dashjian, Solvang, California, for the petitioner-appellant.

Stephen M. Kaufman, Deputy Attorney General, Los Angeles, California, for the respondents-appellees.

Before: WALLACE, TROTT, and HAWKINS, Circuit Judges.

Opinion by Judge TROTT; Concurrence by Judge MICHAEL DALY HAWKINS.

TROTT, Circuit Judge:

On December 18, 1992, Tolbert was convicted of first degree robbery. He was sentenced to California state prison for thirteen years. The California court of appeal affirmed his conviction. His petition for rehearing as well as his petition for review before the California Supreme Court were denied. Tolbert, a black African–American male, then filed a federal petition for writ of habeas corpus attacking the prosecutor's use of a peremptory challenge to remove a black prospective juror. The district court denied his petition, and he appealed. The case was then heard at this panel's request by an en banc court to resolve a conflict in the law of our circuit, *Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999) (en banc), and returned to us for a decision on the merits. We now affirm the district court.

## I

### Background

During voir dire, the prospective black juror at issue reported that both he and his sister had been the victims of theft crimes. He expressed a preference for stricter gun control, and stated he had served as a juror in a case resulting in a hung jury due to lack of sufficient evidence. At the end of the trial court's questioning, the prospective juror, Edward Robertson, asked if he could speak with

the judge. At the bench, Robertson stated:

Oh boy. It is something that I feel strongly about. And in listening to all the questioning that you did of all the jurors and so forth you asked about, you know, how they felt about police and so forth like that, but as I sat there I was curious as to why we did not ask anything about their race. And to me this is a highly charged issue nowadays and it just concerns me whether or not an individual can look at an individual and not have predetermined views as to whether or not a defendant is guilty based on their race or how they personally feel.

Now my personal opinion for myself I am honest. I can ignore this, but put that aside, but I am highly concerned about it. I am dealing with it every day, and it is a very subtle thing, but it is probably American culture. I think you need to bring that out. As long as you are bringing it out and know that it is there then you are okay you can work with it.

The court responded by explaining to Robertson that the case did not concern race and to bring it up would likely confuse prospective jurors. Robertson stated he thought it was important to express his concerns to the judge, but claimed he could be fair in this case. Before returning to his seat, Robertson stated, "Also, I glanced at the jurors to see what the composition of the jury was and it seemed to be between American, Indian, Hispanic, female, male, so I think along those lines it should be adequate." When asked again whether he could be fair and impartial, Robertson answered, "Yes, I think so."

The next day, the prosecutor exercised her second peremptory challenge against Robertson. Defense counsel immediately made a *Wheeler* motion. In California, a *Wheeler* motion is the procedural equivalent of a federal *Batson* challenge. *See People v. Jackson,* 10 Cal.App.4th 13, 12 Cal.Rptr.2d 541, 545 n. 5 (1992) (citing

*People v. Turner,* 42 Cal.3d 711, 230 Cal. Rptr. 656, 659, 726 P.2d 102 (1986)). In support of the motion, counsel pointed out that both defendants were black males, and that the challenged juror, Robertson, was the only black male in the jury venire. The court opined that the challenge was based upon Robertson's comments at the bench from the day before. The court also stated that counsel would have to make a prima facie showing beyond the fact that the challenged juror was black.

To establish a prima facie case, defense counsel argued that there was nothing wrong with Robertson and that many people would ask questions regarding race issues if given the opportunity. Further, defense counsel argued that Robertson's remarks could not be separated from the fact of his race, and, therefore, that the prosecution's challenge violated the Equal Protection Clause. The trial court determined that Robertson's comments provided a sufficient reason to exercise a peremptory challenge. The court denied the *Wheeler* motion on the basis that defense counsel had failed to establish a prima facie case of discrimination. The court said,

I don't think there has been a sufficient showing for prima facie in any case. Based on the responses given by Mr. Robertson yesterday afternoon I would think those would be sufficient reasons to exercise a peremptory, but I don't think prima facie [sic] has been shown. I will deny the *Wheeler* motion at this time.

The prosecutor was not asked to justify her removal of Robertson.

## II

### Discussion

A *Batson* challenge involves a three-step analysis. First, the movant must make a prima facie showing that the prosecution has engaged in racially discriminatory use of a peremptory challenge. *Batson v. Kentucky,* 476 U.S. 79, 96–97,

106 S.Ct. 1712, 90 L.Ed.2d 69. Second, once the trial court decides a prima facie case has been established, the burden shifts to the prosecutor to articulate a race-neutral explanation for the challenges. *Id.* at 97–98, 106 S.Ct. 1712. Third, the trial court must determine whether the defendant has established purposeful discrimination. *Id.* at 98, 106 S.Ct. 1712. If the defendant fails to establish a prima facie case, the burden does not shift to the prosecution, and the prosecutor is not required to offer an explanation for the challenge. *Id.* at 96–97, 106 S.Ct. 1712.

## A. Elements of a Prima Facie Case

■ In order to establish a prima facie case of discrimination, the defense must show: (1) the defendant is a member of a cognizable racial group; (2) the prosecution has removed members of such a racial group; and (3) circumstances raise an inference that the challenges were motivated by race. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712.

In this case, Tolbert has established that he and the challenged juror were African-American, thereby satisfying the first two requirements of a prima facie case.[1] Tolbert also needed to show, however, that the facts and circumstances raised an inference of prosecutor's discriminatory motive—the third requirement of a prima facie case.

■ Tolbert need not have shown that the prosecution engaged in "a pattern of discriminatory strikes against more than one prospective juror." *United States v. Vasquez-Lopez,* 22 F.3d 900, 902 (9th Cir. 1994). This circuit has held that the striking of only one prospective juror with dis-

criminatory purpose violates the Constitution. *Id.* (citations omitted). However, the striking of one juror of a cognizable racial group does not by itself raise an inference of discriminatory purpose. *Id.* Instead, the trial court must consider the totality of relevant circumstances. *Id.; United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989). The trial judge, experienced in supervising voir dire, is in the unique position of observing the voir dire firsthand, as well as the prosecutor's questions and statements during examination, an activity that may support or refute an inference of discriminatory motive. *See, e.g., Batson,* 476 U.S. at 97, 106 S.Ct. 1712; *Johnson v. Campbell,* 92 F.3d 951, 953 (9th Cir.1996).

The trial court here ruled that Tolbert had not established a prima facie case of discriminatory purpose. The trial court explicitly concluded that the prosecutor was justified in challenging the prospective juror on the basis of the comments the juror made to the judge the day before. On appeal, Tolbert now contends that the trial court erred, and that the district court, in denying habeas relief, applied the wrong standard of review.

## B. Habeas Standard of Review

■ Sitting as an en banc court, we have now determined that on habeas we review deferentially, not de novo, a state trial court's ruling on whether a criminal defendant has established a prima facie case of prosecutorial discrimination in the exercise of a peremptory challenge. *Tolbert,* 182 F.3d at 685. In so doing, we apply the "presumption of correctness" under 28 U.S.C. § 2254(d) (1995) to the state trial court's determination that Tolbert failed to

---

1. Tolbert also argues that his *Batson* challenge may be characterized as an exclusion of a black male, not simply a black person from the jury venire. The district court held that, even if it were to conclude that " 'African-American men' is a cognizable group for *Batson* purposes, that determination would be a new rule which could not be applied retroactively to petitioner's case." Whether the cross-section of gender and race proposed by

Tolbert constitutes a cognizable class is irrelevant to this case. The district court properly found that the defendant was a member of a cognizable racial group and the prosecution removed another member of this cognizable group. Thus, it is irrelevant whether defendant and the venireperson were *also* members of another cognizable group, i.e., African-American males.

establish a prima facie case of discrimination. *Id.*

## C. The District Court Correctly Determined that Tolbert Failed to Overcome the Presumption that the State Trial Court Correctly Found No Establishment of a Prima Facie Case of Discrimination

Tolbert contends that Robertson was an unexceptional juror whose answers to questions during voir dire did not substantially differ from those answers offered by jurors who were eventually chosen to sit. Tolbert notes that Robertson's preference for stricter gun control was shared by three other jurors who sat on the jury, and that Robertson's past service on a hung jury was an experience shared by another juror eventually chosen. The only strong distinction between Robertson and those jurors left unchallenged was his unusual request to approach the bench in order to express his strong concerns regarding racial prejudice.

■ Challenging a prospective juror on the basis of his expressed opinions about the judicial system does not violate *Batson*. *United States v. Fike*, 82 F.3d 1315, 1320 (5th Cir.1996) ("*Batson* does not forbid striking a juror who holds a particular opinion about the U.S. justice system. Rather, it forbids striking jurors based on their race."). In this case, the trial court articulated a reasonable view of the prosecution's peremptory challenge of Robertson related to his expressed views on the importance of race in the evaluation of individual guilt.

■ Tolbert argues that striking Robertson on the basis of his opinions on race was equivalent to striking him on the basis of his race. We respectfully disagree. The assumption that race and an opinion on race are inseparable is antithetical to the very type of racial stereotyping that *Batson* forbids. Tolbert simply has not shown that Robertson's concern regarding the potential of racist attitudes of juries is "a characteristic that is peculiar to any race." *Purkett v. Elem*, 514 U.S. 765, 769,

115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (quoting *EEOC v. Greyhound Lines, Inc.*, 635 F.2d 188, 190 n. 3 (3d Cir.1980)). Robertson's views about racial attitudes are shared by many not of his race or belonging to any racial minority. Thus, having failed to establish that Robertson's opinions about the importance of race was peculiar to his race, or that the opinions stood as a proxy for it, defense counsel did not raise even an inference that the prosecutor's challenge was based on Robertson's race, thereby violating the Equal Protection Clause. Accordingly, because nothing in this record vanquishes the presumption of correctness to which the state trial court's decision is entitled, the district court properly determined that Tolbert had not established a prima facie case of discriminatory use of a peremptory challenge.

AFFIRMED.

MICHAEL DALY HAWKINS, Circuit Judge, concurring:

Judge Trott quite properly applies the law of the case in affirming the district court's denial of habeas relief and, for that reason, I join in the result. However, a brief comment is in order. If one is blind to the racial makeup of a particular juror, as *Batson* and its progeny seem to require, then Edward Robertson was, from everything the record tells us, the kind of juror a prosecutor would ordinarily love to see serve, especially in an armed robbery case. He spoke eloquently when questioned. He had prior jury service. Both he and his sister had been victims of theft crimes and he believed in stricter gun control. Yet the prosecutor chose to exercise a peremptory challenge to prevent him from serving as a trial juror.

Unfortunately, we will never know the prosecutor's reason for striking Mr. Robertson because she was never required to give one. Rather, the trial court found that Tolbert's counsel, who made a timely and proper *Batson–Wheeler* objection, had not made out a prima facie case of discrim-

inatory challenge by the prosecution. The prosecutor may have had a perfectly sensible and race-neutral explanation for striking Mr. Robertson, but because the trial court found a reason where none was offered, we will never know.

We do know that, during the jury selection process, Mr. Robertson asked to approach the bench and inquire why—in a case with two African–American men on trial—no questions about race were being asked in the jury selection process. The trial court offered an explanation. Mr. Robertson accepted it and acknowledged he could still be a fair and impartial juror. Like the prosecutor's explanation for striking him, we will never know why he asked these questions at sidebar. He may have been anxious to state affirmatively that he could judge another African–American fairly; he may have wanted other jurors to be asked whether they could rely on an identification of a person of a different race. But there was nothing in his having spoken up that would suggest he could not be a fair and impartial juror.

On a fairly regular basis, we read of prisoners being released when scientific tests show they could not have committed the crime of which they were convicted. *See, e.g.,* Naftali Bendavid, *For Innocent, DNA Proving Sturdy Ally In Five Years, The Innocence Project Has Helped Free 32 Convicts Through DNA Tests,* Chicago Tribune, Oct. 27, 1997, at 1; *Innocence Project Uses DNA Testing To Exonerate Some Inmates, The Group Highlights Advances In Technology,* St. Louis Post–Dispatch, Nov. 9, 1997, at C–12; Steve Mills and Ken Armstrong, *Yet Another Death Row Inmate Cleared,* Chicago Tribune, May 18, 1999, at 1. Many of these prisoners are of African–American descent. *See, e.g.,* David Firestone, *DNA Test Frees Accused Rapist After 16 Years In Georgia Prison,* The Plain Dealer (Cleveland), June 16, 1999, at 19A. How many jurors of their

own race were struck from the juries that convicted these individuals is not normally reported upon. We do know that the ideal of *Batson* has lost considerable currency in the trenches of criminal trials.[1] Maybe, just maybe, some of those juries that convicted some of those now known to have been innocent could have used a few more jurors like Edward Robertson.

---

1. *See, e.g., Carter Center Symposium On The Death Penalty–July 24, 1997,* 14 Ga. St. U.L.Rev. 329, 367–74 (1998); Sheri Lynn Johnson, Black Innocence and The White Jury, 83 Mich. L.Rev. 1611 (1985); Jere W. Morehead, *When A Peremptory Challenge Is No Longer Peremptory: Batson's Unfortunate Failure To Eradicate Invidious Discrimination From Jury Selection,* 43 DePaul L.Rev. 625, 633–36 (1994).