**Michael COOPERWOOD,**
**Petitioner–Appellant,**

v.

**Steven CAMBRA, Jr., Warden,**
**Respondent–Appellee.**

No. 99–15518.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 2001

Filed Feb. 20, 2001

Amended April 4, 2001

Denise Kendall, Mill Valley, California, for the petitioner-appellant.

Laurence Sullivan, Supervising Deputy Attorney General, San Francisco, California, for the respondent-appellee.

Before: GOODWIN, GRABER, and PAEZ, Circuit Judges.

## ORDER AND AMENDED OPINION

GOODWIN, Circuit Judge:

### ORDER

The opinion filed February 20, 2001, No. 99–15518, 2001 WL 138611 (9th Cir.2001), is amended as follows:

1. Carryover paragraph at slip op. 2256–57: Replace the first sentence with the following:

"Cooperwood, an African–American male, contends that the prosecution exercised an illegal peremptory challenge against a black male juror in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)."

2. Carryover paragraph at slip op. 2256–57: After the second sentence, replace the citation "*Id.* at 89, 114 S.Ct. 1419." with *Batson,* 476 U.S. at 89, 106 S.Ct. 1712.

3. Carryover paragraph at slip op. 2256–57: Replace the third sentence with the following:

"In turn, *J.E.B.* held that gender-based peremptory challenges also violate the Fourteenth Amendment. *J.E.B.,* 511 U.S. at 130–31, 114 S.Ct. 1419. A challenge under *Batson* and *J.E.B.* involves a three-step analysis."

4. Carryover paragraph at slip op. 2256–57: In the fourth sentence of the paragraph, omit the word "racially." Replace the citation "*Id.* at 96–97, 106 S.Ct. 1712." with "*Id.* at

144–45, 114 S.Ct. 1419; *Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712."

5. Carryover paragraph at slip op. 2256–57: In the fifth sentence in the paragraph, add "or gender-neutral" after "race-neutral." Replace the citation "*Id.* at 97–98, 106 S.Ct. 1712." with "*Batson,* 476 U.S. at 97–98, 106 S.Ct. 1712; *J.E.B.,* 511 U.S. at 145, 114 S.Ct. 1419."

6. Carryover paragraph at slip op. 2256–57: After the second to last sentence in the paragraph, replace the citation "*Id.* at 98, 106 S.Ct. 1712." with "*Batson,* 476 U.S. at 98, 106 S.Ct. 1712."

7. First full paragraph at slip op. 2257: Omit the word "racial" after (1) and add the words "or gender" to the end of the sentence. Add "*J.E.B.,* 511 U.S. at 144–45, 114 S.Ct. 1419" before city to *Gomez.*

8. Replace the beginning of the carryover paragraph at slip op. 2257–58 with the following:

"As a threshold matter, Appellant argues that African–American males constitute a cognizable class for purposes of challenges under *Batson* and *J.E.B.* We have previously declined to address this issue. *See Turner v. Marshall,* 63 F.3d 807, 812 (9th Cir.1995), *overruled on other grounds by Tolbert v. Page,* 182 F.3d 677 (9th Cir.1999) (en banc); *Gomez,* 190 F.3d at 988 n. 1. If we were to determine today that African–American males form a cognizable group, it would be too late ..."

9. Carryover paragraph at slip. op. 2257–58. Remove "However," from the last full sentence at slip. op. 2257 and change the sentence so that it begins "As in *Gomez,*".

10. Add a new final sentence to the end of the carryover paragraph at slip. op. 2258–59:

"Therefore, we limit our inquiry to whether Appellant has made a prima facie

*Batson* case on the basis of race only. *See Turner*, 63 F.3d at 812."

With the opinion thus amended, the panel has voted unanimously to deny the petition for rehearing. Judges Graber and Paez have voted to deny the petition for rehearing en banc, and Judge Goodwin recommended denial.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App.P. 35.

The petition for rehearing is DENIED and the petition for rehearing en banc is DENIED.

## OPINION

Michael Cooperwood was convicted in a California trial court of attempted premeditated murder (Cal.Penal Code §§ 187, 664) and of possession of a firearm by a felon (Cal.Penal Code § 12021). He appeals the district court's denial of his petition for a writ of habeas corpus. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), and we affirm.

Karol Tasker was the wife of a convict named Harold Benson, whose friend, Cooperwood, agreed to "look after" Tasker while Benson was incarcerated. Benson became upset with Tasker when he had trouble locating her and suspected her of cheating on him. On November 17, 1992, Cooperwood took Tasker in an automobile and, after driving around Oakland with her for an hour, pulled out a handgun and shot her several times. She survived to become a witness.

Cooperwood was sentenced to a term of life with the possibility of parole, plus 19 years for various sentence enhancements. He appealed to the California Court of Appeal, which affirmed the judgment. His first petition for a writ of habeas corpus, filed in the district court, was dismissed without prejudice so that he could exhaust his claims in state court. The California Supreme Court subsequently denied relief. In 1997, Cooperwood filed the present petition, which the district court denied.

Cooperwood, an African–American male, contends that the prosecution exercised an illegal peremptory challenge against a black male juror in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). *Batson* held that the use of race-based peremptory challenges to excuse prospective jurors violates the Equal Protection Clause of the Fourteenth Amendment. *Batson*, 476 U.S. at 89, 106 S.Ct. 1712. In turn, *J.E.B.* held that gender-based peremptory challenges also violate the Fourteenth Amendment. *J.E.B.*, 511 U.S. at 130–31, 114 S.Ct. 1419. A challenge under *Batson* and *J.E.B.* involves a three-step analysis. The movant must first make a prima facie case showing that the prosecution has engaged in a discriminatory use of a peremptory challenge. *Id.* at 144–45, 114 S.Ct. 1419; *Batson*, 476 U.S. at 96–97, 106 S.Ct. 1712. Second, once the claimant has established a prima facie case, the burden shifts to the prosecutor to articulate a race-neutral or gender-neutral explanation for the challenge. *Batson*, 476 U.S. at 97–98, 106 S.Ct. 1712; *J.E.B.*, 511 U.S. at 145, 114 S.Ct. 1419. Third, the trial court must determine whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98, 106 S.Ct. 1712. If the defendant fails to establish a prima facie case, the burden does not shift to the prosecution, and the prosecutor is not required to offer an explanation for the challenge. *Id.* at 96–97, 106 S.Ct. 1712; *see Tolbert v. Gomez*, 190 F.3d 985, 987–88 (9th Cir. 1999).

To establish a prima facie case, the defendant must establish that (1) the pro-

spective juror who was removed is a member of a cognizable group, (2) the prosecution exercised a peremptory challenge to remove the juror, and (3) "the facts and any other relevant circumstances raise an inference" that the challenge was motivated by race or gender. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712; *see J.E.B.,* 511 U.S. at 144–45, 114 S.Ct. 1419, *Gomez,* 190 F.3d at 988.

██ As a threshold matter, Appellant argues that African–American males constitute a cognizable class for purposes of challenges under *Batson* and *J.E.B.* We have previously declined to address this issue. *See Turner v. Marshall,* 63 F.3d 807, 812 (9th Cir.1995), *overruled on other grounds by Tolbert v. Page,* 182 F.3d 677 (9th Cir.1999) (en banc); *Gomez,* 190 F.3d at 988 n. 1. If we were to determine today that African–American males form a cognizable group, it would be too late to help Cooperwood because the "new rule could not be applied retroactively to petitioner's case." *Gomez,* 190 F.3d at 988 n. 1; *see also Teague v. Lane,* 489 U.S. 288, 305–06, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding that new constitutional rules of criminal procedure will not be applicable to those habeas cases which became final in state court before the new rules were announced, unless they fall within several narrow exceptions). As in *Gomez,* because "the defendant was a member of a cognizable racial group [African–Americans] and the prosecution removed another member of this cognizable group[,] … it is irrelevant whether defendant and the venireperson were also members of another cognizable group, *i.e.,* African–American males." *Gomez,* 190 F.3d at 988 n. 1. That Cooperwood and the challenged juror are both African–American is enough to form the basis of a *Batson* claim.

██ Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court may disturb a state court's determinations of law only if they were "contrary to" or "involved an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Furman v. Wood,* 190 F.3d 1002, 1004 (9th Cir.1999). Usually, we will defer to the state court's determination of whether a prima facie case has been shown. *Page,* 182 F.3d at 685. However, we have held that, when a state court employs the wrong legal standard, the AEDPA rule of deference does not apply. *See Wade v. Terhune,* 202 F.3d 1190, 1195 (9th Cir.2000).

██ In holding that Cooperwood failed to establish a prima facie case, the state trial court stated that, "[w]hile the person excluded [] certainly is a member of a cognizable group, there has been no demonstration that there is a strong likelihood that the challenges are based on group association." The "strong likelihood" standard applied by the state court has its roots in the California Supreme Court's decision in *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). This standard, however, does not accord with the one announced in *Batson,* which merely requires that there be a "reasonable inference" that the peremptory challenge is being used on the basis of race. 476 U.S. at 96, 106 S.Ct. 1712. In light of this disparity, we held, in *Wade v. Terhune,* 202 F.3d 1190, 1192 (9th Cir.2000), that "the *Wheeler* standard … does not satisfy the constitutional requirement laid down in *Batson.*"

The *Wheeler* opinion in fact used both the "reasonable inference" and "strong likelihood" phrases in setting forth the standard for determining a prima facie case, prompting the *Wade* court to speculate that the two standards originally meant the same thing. *See Wade,* 202 F.3d at 1196. Nevertheless, subsequent interpretation by lower courts created a

doctrinal divergence. While the California Court of Appeals held in *People v. Fuller*, 136 Cal.App.3d 403, 423, 186 Cal.Rptr. 283 (Cal.Ct.App.1982), that the two phrases in fact referred to the same standard (which was in turn compatible with the *Batson* rule), a different district of the same court subsequently explicitly rejected the "reasonable inference" language in favor of the more relaxed standard. *See People v. Bernard*, 27 Cal.App.4th 458, 465, 32 Cal. Rptr.2d 486 (1994), *overruled by People v. Box*, 23 Cal.4th 1153, 99 Cal.Rptr.2d 69, 5 P.3d 130, 152 n. 7 (2000). The *Wade* court therefore held that, "from that point forward [after *Bernard*], California state courts have applied a lower standard of scrutiny to peremptory strikes than the federal Constitution permits." *Id.* at 1196, 99 Cal.Rptr.2d 69, 5 P.3d 130. Therefore, we limit our inquiry to whether Appellant has made a prima facie *Batson* case on the basis of race only. *See Turner*, 63 F.3d at 812.

The state nevertheless argues that *Box* resolved the issue by overruling *Bernard* and holding that "in California, a 'strong likelihood' means a 'reasonable inference'." 99 Cal.Rptr.2d 69, 5 P.3d at 152 n. 7. *Box* indeed "disapprove[d] *Bernard* to the extent it is inconsistent with" *Wheeler*, and thus announced that *Wheeler* and *Batson* have always been in alignment. *See id.* The state contends that, since the two phrases refer to the same thing, the California state court applied the correct standard in the instant case.

First, the state ignores the fact that *Box* was handed down five years after Cooperwood's conviction in the state trial court— during the period when *Bernard* was still good law and California courts were applying an unconstitutionally relaxed standard of scrutiny. *See Wade*, 202 F.3d at 1196. In this light, there is little question that the trial court's use of the "strong likelihood" language reflects that it was follow-

ing *Bernard*'s take on *Wheeler*, and thereby applying an unconstitutional standard of review.

Therefore, regardless of the California Supreme Court's "clarification" of the language used in *Wheeler*, we will continue to apply *Wade*'s de novo review requirement whenever state courts use the "strong likelihood" standard, as these courts are applying a lower standard of scrutiny to peremptory strikes than the federal Constitution permits. *See Wade*, 202 F.3d at 1192 (holding that the "strong likelihood" standard announced in *Wheeler* and adopted by *Bernard* "does not satisfy the constitutional requirement laid down in *Batson*"). We now review de novo the state court's ruling on the *Batson* prima facie issue.

The following facts emerged from the trial court proceedings: The trial court conducted voir dire of the prospective jurors. The prosecutor exercised his first peremptory against juror Martin, who expressed difficulty about resolving testimonial conflicts. The prosecutor then passed seven times and challenged juror Adams, who had been a recent defendant in a case of driving under the influence brought by the prosecutor's office. The prosecutor then challenged juror James, a black male. Defense counsel made a *Wheeler/Batson* motion, after which the court solicited a response from the prosecutor. The prosecution noted that it had made two previous challenges of white jurors and that one or two remaining jury members were African–American, to which defense counsel responded that the prosecutor had engaged Mr. James "in absolutely no voir dire whatsoever." The trial court then held that Cooperwood had not established a prima facie case.

■ The remaining question is whether, upon de novo review, we agree with the state court that Petitioner failed to make out a prima facie *Batson* violation. Peti-

tioner has alleged no facts that establish a prima face case under the "reasonable inference standard." Both jurors excused prior to Mr. James were white. Two African–American women remained seated in the jury box at the time of the challenge of Mr. James. After Mr. James was excused, additional African–American persons remained available to be drawn. The ultimate composition of the trial jury included the two black women, as well as three Asian Americans and one Pacific Islander. Additionally, one of the white jurors against whom the prosecutor had exercised a peremptory challenge had been questioned in voir dire only by the judge, without supplemental questions from the prosecutor. The above facts, viewed objectively, do not raise a reasonable inference of racial bias. Accordingly, because there was no prima facie *Batson* violation, we need not reach the quality of the prosecution's response, as none was required.

AFFIRMED.