Filed 4/29/14  P. v. Sok CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048544 |
| v. | (Super. Ct. No. 09WF2166) |
| DUYEN KIM SOK, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed, as modified.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury found Duyen Kim Sok guilty of attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a); count 1; all statutory references are to the Penal Code unless noted), aggravated mayhem (§ 205; count 2), mayhem (§ 203; count 3), and aggravated assault (§ 245, subd. (a)(l); count 4).   As to counts 1 through 3, the jury found Sok personally used a deadly weapon (§ 12022, subd. (b)(1)), and on all counts found that Sok personally inflicted great bodily injury (§ 12022.7, subd. (a)).   The trial court found five of Sok's prior convictions constituted sentencing strikes (§§ 667, subds. (d) & (e)(2)(a), 1170.12, subd. (c)(2)(A)), including one serious felony prior conviction (§ 667, subd. (a)(l)).   The court dismissed the mayhem conviction as necessarily included in the aggravated mayhem conviction, stayed counts 2 and 4 (and their corresponding enhancements) under section 654, and sentenced Sok to an aggregate term of 34 years to life in state prison.

Sok asserts:  (1) the trial court erred by failing sua sponte to provide the jury with a pinpoint instruction on the doctrine of defense of others when a victim escalates a conflict with the use of deadly force; (2) the trial court abused its discretion by denying his motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to strike at least three of his prior convictions and sentence him as a second strike offender; (3) that we must vacate the great bodily injury enhancement on the aggravated mayhem count must be vacated; and (4) the abstract of judgment must be amended to delete the suggestion the sentences stayed under section 664 were imposed concurrently.  As we explain, Sok's contentions are without merit except that the great bodily injury enhancement on the aggravated mayhem count must be vacated.  We therefore affirm the judgment as modified (§ 1260) to delete that enhancement, with directions to the trial court to amend the abstract of judgment accordingly.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

Late on an October evening in 2009, Minh Do, his girlfriend Hasanah Yousef, and her friend Amy Nguyen occupied a private room at the Phoenix Karaoke Club in the City of Stanton. Sok, Danny Vu, and Vu's companion Ngoc Tran entered the room, but Sok remained at the door of the room, holding an object behind his back, which the eventual victim, Do, believed was a gun. Do's girlfriend Yousef later gave conflicting information about whether she had dated Vu. Vu asked Yousef to speak with him outside the room but when she refused, Tran became indignant, slammed her high heel on the table, jumped on Yousef pushing her into the couch, and struck Yousef on the head with her shoe.

Vu joined the attack on Yousef, punching her in the stomach. Do responded by striking Vu in the face, and he climbed on top of Vu and continued to punch him, landing "a few" blows. Vu was "not hitting back," but Vu did not lose consciousness and his face did not show any injuries later that night. Do did not have a weapon. Nevertheless, Sok intervened and began striking Do in the head with the object he had been holding, a large knife with a seven-inch blade. Blood poured onto Do's face. He stood to confront Sok, but Vu also rose and separated Do from Sok. Vu advised Do, "Calm down, homeboy," but then grabbed and held Do from behind while Sok swung the knife wildly. Vu rushed at Yousef again, but Do threw himself on her to protect her, and received further blows from behind. Neither Do, nor the other witnesses ever observed Vu holding a weapon, only Sok.

Sok, Vu, and Tran fled. Do gave chase, and Tran struck him on the head with a mop or broom as she exited the room. Garden Grove Police Officer Timothy

3

Kovacs noticed unusual activity outside the club when he observed a trio jump into a Lexus and drive off. When the club security guard informed Kovacs that the Lexus occupants had stabbed someone, Kovacs pursued them in his patrol vehicle at speeds up to 110 miles per hour, to no avail. Another officer, however, apprehended them with Sok at the wheel. Vu admitted they had just been at the club. Vu had deep lacerations on his wrists, and the police discovered a butterfly knife and an empty sheath for a larger knife inside the vehicle. The sheath had the words "KA-BAR" and "U.S.M.C." imprinted on it.

Back at the club, responding officers found Do covered in blood. A piece of his scalp was missing, he had a deep cut all the way to the bone in his left arm, his ear had been sliced in half, and he had several cuts consistent with knife wounds on the back of his head and on his shoulders and chest. Do told the officers Sok struck him repeatedly with a knife. The officers found a large KA-BAR-style knife on the club's blood-stained floor, and the knife fit the sheath in Sok's car. Paramedics transported Do to the hospital, where he remained for two weeks. Vu was also treated at the hospital for lacerations and released.

II

DISCUSSION

A.   *The Trial Court Had No Duty to Instruct on a Victim's Use of Deadly Force*

Sok argues that the trial court failed a sua sponte duty to instruct the jurors that an aggressor regains the right to defense of others if the victim responds with sudden and excessive or deadly force. The trial court instructed the jurors that a defendant is generally entitled to defend another person against an attack (CALCRIM No. 3470), with the proviso that the self-defense and defense of others doctrines do not apply to those

4

who initiate a fight (CALCRIM No. 3472). Sok concedes that "members of [his] group inarguably initiated the fight." But he notes that even in the victim's narrative of events, the evidence showed he stood by the door with his hands behind his back when the fight started, intervening only after Do punched Vu "continuously" while Vu was "not hitting back." Sok argues that a reasonable juror could find that Do escalated the degree of force "from non-deadly to deadly" by continuously punching Vu in a manner that objectively appeared to be deadly force.

Generally, an initial aggressor may not invoke the doctrine of self-defense (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1), unless he or she abandons the attack and communicates as much to the victim (*People v. Hecker* (1895) 109 Cal. 451, 464), or if the initial assault is of a nondeadly nature and the victim responds with a sudden escalation to deadly force. (*People v. Quach* (2004) 116 Cal.App.4th 294, 301 ["Where the original aggressor is not guilty of a deadly attack, but of a simple assault or trespass, the victim has no right to use deadly or other excessive force. . . . If the victim uses such force, the aggressor's right of self-defense arises"(internal citations and quotations omitted)].)

The trial court does not have a duty to provide a pinpoint instruction absent a defense request. (*People v. Anderson* (2011) 51 Cal. 4th 989, 998.) A modification of a specific jury instruction also requires a defense request. (*People v. Hart* (1999) 20 Cal.4th 546, 622.) The trial court has a duty to instruct sua sponte regarding a defense (1) if it appears that the defendant is relying on such a defense, or (2) if substantial evidence supports the defense and it is not inconsistent with the defendant's theory of the case. (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 157.)

5

Absent a request, the trial court had no duty to instruct the jury on the escalation to deadly force that Sok now alleges. Sok did not contend that after his cohort's unprovoked attack he was entitled to defend them with deadly force because he believed Do had responded with deadly force. Instead Sok focused his trial defense on mistaken identity and reasonable doubt, suggesting *Vu* wielded the knife and slashed Do, and that poor police forensic work and gaps in the evidence therefore required acquittal. Because Sok did not rely on the particular theory he now asserts, the trial court was not required to give the instruction Sok claims was necessary.

Additionally, the trial court had no sua sponte duty to give the instruction because the evidence did not support it. Sok acquiesced when the trial court noted it was not giving the instruction on an initial aggressor's resuscitated right of defense (CALCRIM No. 3471), probably because trial counsel recognized no evidence supported the instruction. Specifically, nothing suggests Sok's use of force was reasonable in comparison to the force used by the victim. As Sok conceded, members of Sok's group, Tran and Vu, initiated the fight by punching Yousef. Sok joined the fight when Do was punching Vu. Do had no weapon, nor did Sok have reason to believe that Do had a weapon. While Do punched at Vu continuously in defense of Yousef, nothing suggested Do's blows posed a threat of deadly force; Vu suffered no injuries from the few punches Do landed, and Vu did not lose consciousness or in any other manner exhibit potentially life-threatening distress. Yet Sok attacked Do in the head, back, and chest repeatedly with a knife. Do's nonlethal response to Vu's assault on Yousef did not give Sok the right to respond with deadly force.

In any event, the jury effectively resolved under another instruction the claim Sok now asserts. The trial court instructed the jury with CALCRIM No. 3470,

which required as a component of a successful defense of others claim that "the defendant used no more force than was reasonably necessary to defend against that danger." By its verdict, the jury found Sok's use of a deadly weapon was not "reasonably necessary" to defend against Do's defensive measures in a fistfight. There was no error.

B.      *The Trial Court Did Not Abuse Its Discretion in Denying Sok's* Romero *Motion*

Sok contends the trial court erred in denying his motion at sentencing to strike in the interest of justice (§ 1385, subd. (a)) three of his five prior strike convictions because he fell outside the spirit of the Three Strikes law. (*Romero*, *supra*, 13 Cal.4th at p. 504.) Sok argues his recidivist status was not so serious because his prior offenses were remote, occurring 14 years earlier (*see People v. Deloza* (1998) 18 Cal.4th 585, 597-599) in a single aberrant episode, and he committed no new offenses in the interim. Sok also argues that because the jurors found that he did not commit premeditated attempted murder, the trial court was mistaken that the Three Strikes law applied because Sok had a tendency to "enter[] buildings to perpetrate armed attacks on unsuspecting and defenseless victims."

We review a trial court's ruling on a motion to strike prior strikes for abuse of discretion. (*People v. Williams* (1998) 17 Cal.4th 148, 162.) We consider whether the ruling "falls outside the bounds of reason" with regard to the relevant facts under the applicable law. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226; *People v. Jackson* (1992) 10 Cal.App.4th 13, 22.)

In exercising its discretion to strike the strike prior allegations, a trial court "must consider whether, in light of the [1] nature and circumstances of his present felonies and [2] prior serious and/or violent felony convictions, and [3] the particulars of his background, character, and prospects, the defendant may be deemed outside the

7

scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Sok's prior strike convictions arose from an armed home invasion in 1995 at age 21 when he and his coperpetrators forced their way into a residence and held three female victims hostage with guns pointed at their heads. Sok's five strike offenses included residential burglary, conspiracy to commit robbery, and three counts of attempted robbery, including an enhancement for personal use of a firearm. Sok was sentenced to a nine-year prison term.

The trial court did not abuse its discretion in denying Sok's *Romero* motion. While Sok committed his strike offenses almost 15 years earlier, the trial court reasonably could place little stock in his claim of a crime-free life in the interim, given he was not discharged from parole until 2006, just three years before he reoffended with great violence in the present case. The trial court reasonably could conclude that absent close supervision by prison or parole authorities, Sok posed a grave danger to society and therefore fell within the spirit of the Three Strikes law. Sok is also mistaken in suggesting the trial court erroneously concluded Sok's attack in the present case was substantially similar to the conspiracy he entered to commit the earlier home invasion, even though the jury here found the attempted murder was not premeditated. To the contrary, the trial court focused on the viciousness of the attack and the commonality of "defenseless victims," not on Sok's intent, in finding that Sok was clearly a danger to society. The trial court observed that Sok's past and present crimes were "especially frightening" because they included armed entry and attacks on "unsuspecting and defenseless victims." The trial court did not err in denying the motion.

8

C.      *The Great Bodily Injury Enhancement Must Be Vacated on Count 2*

Sok argues, and respondent concedes, that the great bodily injury enhancement (§ 12022.7, subd. (a)) must be vacated as to his aggravated mayhem conviction (§ 205) in count 2.  We agree.  Because great bodily injury is an element of mayhem, an enhancement under section 12022.7 is precluded.  (*People v. Hill* (1994) 23 Cal.App.4th 1566, 1575; *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1558-1560.)

D.      *The Abstract of Judgment Correctly Reflects the Stay Entered under Section 654*

Sok argues that the abstract of judgment must be amended to reflect that in the oral pronouncement of judgment the trial court imposed a prison sentence for counts 2 and 4, but stayed execution of the sentence under section 654.  Specifically, Sok complains that while the abstract of judgment correctly notes that the sentences imposed on counts 2 and 4 are stayed under section 654, the abstract also includes check-marked boxes indicating the sentences are imposed as concurrent terms.  This is a slightly different scenario than in a typical appeal asserting the trial court erred in imposing a concurrent sentence without staying it under section 654.  (See, e.g., *People v. Miller* (1977) 18 Cal.3d 873, 887 [imposition of concurrent terms does not moot question of stay under § 654 because "the defendant is deemed to be subjected to the term of both sentences although they are served simultaneously"].)

We find no error.  Although the trial court did not state it intended to impose concurrent terms in its oral pronouncement, its failure to specify a *consecutive* term effectively resulted in a concurrent term on counts 2 and 4.  (§ 669.)  Sok cites no authority that terms stayed under section 654 may not be deemed concurrent rather than consecutive sentences, in the event the primary sentence is not completed or the stay under section 654 otherwise does not become final.  To the contrary, the disposition in

9

*People v. Lopez* (2004) 119 Cal.App.4th 132, for example, suggests that a sentence stayed under section 654 may also be designated a concurrent term. (*Id.* at p. 139, italics added ["The six-year *concurrent* sentence for count 2 . . . is stayed pending finality of the judgment and service of sentence on count 1, such stay to become permanent upon completion of sentence as to count 1"].) The question in any event is effectively moot and merely academic because the abstract of judgment already reflects that the sentences for counts 2 and 4 are stayed under section 654.

III

DISPOSITION

The judgment is corrected (§ 1260) to vacate the great bodily injury enhancement (§ 12022.7, subd. (a)) on the aggravated mayhem (§ 205) conviction in count 2. As modified, the judgment is affirmed, and the trial court is directed to amend the abstract of judgment accordingly and forward a copy to the Department of Corrections and Rehabilitation.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.


10